EMMA J. ADEN, Plaintiff-Appellee, *v.* ARLEN ALWARDT, Defendant-Appellant.—(DON A. VITS, Third-Party Defendant-Appellant.)

Third District   No. 78-361

Opinion filed August 27, 1979.

Ronald E. Boyer, of Fleming & Boyer, of Watseka, for appellant.

J. C. Ermentrout, of Champaign, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This action involves a forfeiture of a purchaser's rights under an installment contract for the sale of farmland. Following a bench trial the Circuit Court of Iroquois County held that the seller had properly exercised her rights under the forfeiture clause of the contract and denied the buyer's claim for specific performance. The purchaser's lessee was ordered to account to the seller for income and expenses in connection with the farm's operation. We reverse.

The basic facts of the case were stipulated to by the parties. On April 2, 1973, the seller, Aden, and the purchaser, Vits, entered into a contract for the sale of 160 acres of farmland. The total purchase price was $68,000, and the contract provided for a $10,000 down payment with annual principal payments of $2,500 per year to commence on March 1, 1974. In addition the purchaser was to pay 6½ percent interest per year in two yearly payments, one on September 1, and one on March 1. This arrangement was to continue until 1984, when the remaining balance of $33,000 was to be paid in one payment. The purchaser was to pay all taxes on the property. The contract contained a clause making time of the essence and an acceleration clause which allowed the seller, upon written notice to the purchaser, to declare the full balance due if the purchaser failed to make any payment within 30 days of its due date. If the purchaser did not pay the full contract balance within 30 days of the notice of acceleration, the seller could exercise her right to declare a forfeiture under the contract. The purchaser, Vits, took possession of the property and in the spring of 1975, he leased it to his son-in-law, Alwardt.

Beginning with the first payment, the purchaser was consistently late with his payments. The interest payment due September 1, 1973, was 14 days late; the interest payment due March 1, 1974, was 5 days late; and the principal payment due the same date was 15 days late. In each case the seller accepted the late payment without protest. When the interest payment due September 1, 1974, was not made on time, the seller sent notice to the purchaser accelerating the entire balance due on the contract. The purchaser then made the interest payment on October 4, 1974, and the seller did not further pursue her acceleration and forfeiture rights. Subsequently the interest and principal payments due March 1, 1975, were made and accepted four days late.

The purchaser was also tardy with his real property tax payments. He failed to pay the 1973 property taxes when due in 1974, and the property was sold at tax sale. After notice from the mortgagee, the seller, in February, 1975, sent a letter to the purchaser demanding that he redeem the property. The purchaser responded that he would redeem the property by March 28, but he failed to do so and on April 1, 1975, the seller paid the past due 1973 taxes. On April 30, 1975, the purchaser reimbursed the seller for the taxes she had paid. The purchaser also failed to pay the next year's taxes when due. On August 28, 1975, the seller advised the purchaser that if he did not pay the taxes by September 10, action would be taken under the forfeiture clause of the contract. The purchaser did not make the payment, and the property was again sold for taxes. The purchaser also failed to make the interest payment due on September 1, 1975, and on October 5, 1975, the seller sent a certified letter to the purchaser advising him that all amounts due on the contract were

being accelerated because of the purchaser's failure to pay the 1974 taxes and the September interest payment. Although this notice was sent to an address previously given by the purchaser as a return address, the letter was returned to the seller marked "Unclaimed." After paying the delinquent taxes, the seller, on December 17, 1975, sent a notice of forfeiture to the purchaser by certified mail. This letter was also "Unclaimed."

The lessee, Alwardt, continued to farm the property, and in July 1976, the seller demanded that he account to her for the landlord's share of the year's profits. Alwardt failed to do so, and the seller filed an action seeking an accounting from Alwardt and an injunction to prohibit him from further trespassing on the property. The trial court ruled that the seller's action was in fact one for possession under the Forcible Entry and Detainer Act. Alwardt filed a third-party complaint against the purchaser, Vits, and Vits counterclaimed against the seller for specific performance of the contract. Vits deposited with the court $75,500 to cover all amounts due under the contract.

In addition to the above stipulated facts, Alwardt and Vits testified that the failure to pay the taxes and interest payments when due was the result of confusion between themselves. Vits said he tendered the September 1, 1975, interest payment on November 22, but the tender was refused. Alwardt said he attempted to pay the 1974 taxes on December 30, 1975, but was advised by the tax collector that the taxes had already been paid by the seller.

The trial court ruled in favor of the seller on all claims, upholding the forfeiture of the purchaser's rights under the contract, denying the purchaser specific performance of the contract and ordering the lessee, Alwardt, to account to the seller for the income and expenses of the farm operation during his tenancy.

Purchaser first contends on appeal that the trial court erred in refusing to grant him a stay of execution of judgment under section 13 of the Forcible Entry and Detainer Act. (Ill. Rev. Stat. 1977, ch. 57, par. 13.) However, because we have decided to reverse the trial court's judgment on the second issue presented for review, no discussion of this initial contention is required.

Purchaser contends the trial court erred in upholding the forfeiture of his contractual rights and denying him specific performance of the contract. Seller disagrees, noting that the time-of-the-essence clause of the contract, the acceleration and forfeiture provisions of the contract, the fact purchaser had failed to pay the 1974 taxes, and the fact he was over 30 days late with the September 1975 interest payment at the time seller exercised her right of acceleration, are all factors which support the court's ruling.

■■ ■ It is a long-established rule that where a forfeiture has been declared in the manner prescribed in the contract, a court will give effect to it. (*Eade v. Brownlee* (1963), 29 Ill. 2d 214, 193 N.E.2d 786; *Krentz v. Johnson* (1976), 36 Ill. App. 3d 142, 343 N.E.2d 165.) However, it is equally well established that courts of equity abhor forfeitures and will enforce them only where the right to forfeiture is clearly and unequivocally shown and injustice will not result. (*Eade; Miles Homes, Inc. v. Mintjal* (1974), 17 Ill. App. 3d 642, 307 N.E.2d 724.) Essentially what is required is a balancing of the equities involved in the case.

> "The principal factors considered significant in granting relief from forfeitures appear to be: The prior acceptance of late payments and whether the buyer has been given a reasonable warning that the seller will insist on prompt payment in the future (see *Lang v. Parks*, 19 Ill. 2d 223, 226 (1960); *Kingsley v. Roeder*, 2 Ill. 2d 131, 138-139 (1954)); the length of time involved in the delay and whether the default has been repeated (see Annot., 55 A.L.R. 3d 10, §8 (1974); whether substantial payment has been made on the whole contract (see *Rose v. Dolejs*, 1 Ill. 2d 280 (1953)); whether the purchaser has substantially improved the property (see *Rose v. Dolejs*, 1 Ill. 2d 280 (1953)); and whether there has been a mere delay rather than a suspension of the payments (*cf. Hartman v. Hartman*, 11 Ill. App. 3d 524, 528 (1973), and *Monson v. Bragdon*, 159 Ill. 61 (1895))." (*Krentz v. Johnson* (1976), 36 Ill. App. 3d 142, 145, 343 N.E.2d 165, 167.)

Also significant is whether the purchaser's failure to meet the contract's requirements was wilful and, most importantly, whether the seller will receive the full benefit of her bargain if specific performance is granted. *Rose v. Dolejs* (1953), 1 Ill. 2d 280, 116 N.E.2d 402; Annot., 55 A.L.R. 3d 10, 26 (1974).

■■ In the instant case, the seller consistently accepted late principal and interest payments, including the September 1, 1974, interest payment which was made after the seller had sent purchaser a notice of acceleration.

> "[E]ven though time of payment may be declared of the essence, the vendor's right may be temporarily abrogated by his regular acceptance of prior payments at irregular intervals. (*Kingsley v. Roeder*, 2 Ill. 2d 131; *Davies v. Dayton*, 298 Ill. 201; *Smith v. Treat*, 234 Ill. 552.) When this has occurred, a vendor is prevented from treating a tardy payment as ground for forfeiture until he has first given vendee reasonable notice of his intention to thereafter demand strict compliance with the terms of the agreement." (*Lang v. Parks* (1960), 19 Ill. 2d 223, 226, 166 N.E.2d 10.)

The seller's notice must definitely and specifically indicate to the

purchaser that, contrary to past pattern, the time of the essence clause will be strictly enforced in the future. (*Forest Preserve Real Estate Improvement Corp. v. Miller* (1942), 379 Ill. 375, 41 N.E.2d 526.) Whether a continued acceptance of delayed payments constitutes a waiver of the provision that time is of the essence is a question for the trier of fact. *Kingsley v. Roeder* (1954), 2 Ill. 2d 131, 117 N.E.2d 82.

■■ There is no evidence in the present case indicating that the seller revived her right to strict compliance with the time of the essence clause of the contract in regard to principal and interest payments. The seller's acceleration notice of October 15, 1975, did note purchaser's failure to make the September 1 interest payment, but the notice was a demand for full payment on the contract, not a warning that strict compliance with the terms of the contract would be insisted on in the future. (*Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 358 N.E.2d 679.) The seller did not revive her right to strict compliance with the time of the essence clause in regard to principal and interest payments and she, therefore, cannot rely on the purchaser's failure to pay the September 1, 1975, interest payment as grounds for forfeiture of the purchaser's right under the contract.

■■ Seller also waived her right to strict compliance with the contract terms regarding payment of property taxes by paying the 1974 taxes and accepting reimbursement from the purchaser. Seller did, however, on August 28, 1975, notify the purchaser that she would exercise her forfeiture rights if the purchaser did not pay the 1974 property taxes by September 10, 1975. Whether this notice was sufficient to revive the seller's right to strict compliance with the time of the essence clause in regard to payment of property taxes was a question of fact for the trial court. (*Kingsley*) Generally, a 30-day warning of the seller's intention to declare a forfeiture is sufficient (*Kirkpatrick*), but no comprehensive rule as to what constitutes a reasonable notice has been laid down and each case must be determined on its own particular facts. (*Forest Preserve Real Estate Improvement Corp.*) We seriously doubt whether the time period the seller gave the purchaser to make the tax payment was sufficient in light of her payment of the overdue 1973 taxes and acceptance of reimbursement from the purchaser. However, we note that seller did not in fact exercise her acceleration rights until October 15, 1975, more than 45 days after her demand that purchaser pay the taxes. Purchaser made no attempt to pay the taxes until December 30, 1975, and never notified seller of the reason for the delay. Considering these facts, we cannot say the trial court erred in concluding that seller, by her letter of August 28, 1975, gave purchaser reasonable notice of her intention to demand payment of the 1974 taxes.

■■ ■ Nevertheless, our inquiry does not end here. In determining whether the equitable remedy of specific performance should be granted,

we must consider the other factors enumerated above. In the present case, the purchaser's delay in making required payments was repeated, but the length of the delays was generally of short duration, and the seller accepted payments more than 30 days overdue. The purchaser made no improvements on the property, but he did make a substantial payment, $15,000, on the total purchase price. The evidence indicates a mere delay in payments, rather than a total abandonment of the contract. Although purchaser did not claim the notices which were mailed to him, he and his tenant testified that the delay in payments was the result of confusion between them, not a wilful refusal to pay. Most importantly, however, the seller in this case will receive the full benefit of her bargain if specific performance is granted.

> "When, in effect, the seller has not been deprived of the general object of the sales agreement, equity has considered time of performance to be a mere formal defect which may be corrected by payment of the contract balance with interest. See Annot., 55 A.L.R. 3d 10, 16 (1974). See also Restatement of Contracts, sections 275, 276." (*Krentz v. Johnson* (1976), 36 Ill. App. 3d 142, 145, 343 N.E.2d 165, 167.)

\* \* \*

> "[F]orfeitures are not favored by courts of equity and parties will be protected against them wherever wrong or injustice will result from their enforcement. It is especially well settled that where the agreement is simply one for the payment of money, a forfeiture of land incurred by the nonperformance of the agreement will be set aside on behalf of the defaulting party or relief will be granted in any other manner made necessary by the circumstances of the case, on the payment of the debt, interest and costs, unless complainant has debarred himself by his own conduct." *Rose v. Dolejs* (1953), 1 Ill. 2d 280, 289-90.

In the case at bar, purchaser deposited with the court $75,500, an amount sufficient to pay the principal, interest, and other costs due under the contract. If specific performance is granted, seller will be in as good position as she would have been had the contract been completed as intended, and the purchaser will not lose the substantial payment which he made on the contract. Although purchaser's conduct in this case has not been exemplary, we do not believe it should bar him from the relief of specific performance in a situation such as this where seller will receive the full benefit of her bargain. We, therefore, reverse the judgment of the Circuit Court of Iroquois County, and hold that purchaser's claim for specific performance should be granted.

Reversed.

ALLOY and BARRY, JJ., concur.